1-7-1-7-1-4 United Food & Commercial Workers Unions and Employers Midwest Health Benefits Fund et al. v. Novartis Pharmaceuticals Corporation and No. 1-7-1-7-7-6 RXEN Incorporated v. Novartis Pharmaceuticals Corporation et al. Dan, after this case, we'll take a break. Mr. Sobel, good morning. Good morning, and may it please the Court, Tom Sobel for the two group of Gleevec Purchasers. Your Honor, may I reserve three minutes for rebuttal? You may. I would like to address three things. I would like to address two narrowing concepts on the pleadings and then a general legal issue. First, as to the sham litigation claim, we've read detailed subsidiary facts that at trial of the patent case, any version of those facts would show that the beta crystal form of imatinib mesylate would in fact end up being the beta crystal through routine procedures. We plead that not only as a general matter of polymorphism science in the 1990s, but also specifically as to this particular salt, mesylate salt. We even plead two methods, routine methods, by which it was derived. As a result, based upon those subsidiary facts that would happen at a patent trial, under the non-obviousness statutory requirement of a patent, the Court would need to conclude that the follow-on polymorph patent was invalid. Now, the pleadings adequately, therefore, at that point, would plead a sham claim. But there were several other aspects that we went to further to be able to demonstrate why it is that this was a persuasive and real result of what would happen at trial. The first is this. When Novartis finally got approved, Gleevec, in front of the FDA, it went to the patent office and asked the patent office for an extension of its original compound patent. And it told the PTO that our newly approved Gleevec mesylate salt was claimed by the original compound patent. Now, what that means as a matter of law, therefore, according to Novartis, was that the original patent claimed the mesylate salt and anyone with routine procedures would be deriving the beta crystal, because the original patent would, by definition, have to have enabled the creation of the newly approved product. And therefore, according to Novartis' own position before the PTO in subsequent years, they took the position that the original patent itself enabled that salt in that polymorphic form. Second, also, we submitted articles that showed that there were detailed reasons as to how it is that the mesylate salt was derived, but no mention whatsoever about any difficulty of coming to the beta crystal, even though that Novartis was highly motivated in all proceedings to be able to explain that it had done so. And third, we also, in the context of the 12v6 proceedings, submitted an article, not admittedly published in 2012, but showing that the attributes of this particular salt actually, by itself, when it is subject to kinetics, some kind of form of motion, sitting around at room temperature in a week, itself spontaneously morphs into the beta crystal. So for those reasons, I thought, and I think that the district court was incorrect in dismissing under 12v6 the sham claim. So, Mr. Sobel, I'll take as true all of the beta crystal allegations you've just made, but nonetheless, the patent office issues the follow-on patent, and they're going to argue, well, we had the patent, so of course we were going to defend our patent in litigation, and there's nothing sham about it, about the litigation, once we have the patent. So it seems to me it may be that your stronger claim is a claim of fraud on the patent office. That's your other claim. And that's my other claim. Yes, right. Well, can you talk about that fraud on the patent office claim a bit more? You've sort of lumped them together when there may be differentiation. Sure. I did not intend to lump them together. So turning to the Walker process claim, the Walker process claim is similar. Just before you do, I just don't want to leave the sham for a second, so I understand your argument, before you turn to Walker process. I'm following the directions of the court. Just since you started with sham, I don't want you to have to encircle back to it after you do Walker process. I don't want to detain you too long on it. The obvious problem, to use that word, that arises in the sham context is that since the patent was given, the worry is any time there is a defense of obviousness, when someone tries to enforce the patent, the person bringing that obviousness defense can assert that the one enforcing the patent is engaged in a sham enforcement action. So there's got to be some prospect beyond the kind of evidence that would support the defense of obviousness against the enforcer of the patent. And I'm trying to figure out what it would be. I mean, if you had evidence of the person trying to enforce the patent says, I cannot believe I got this patent. Amazing. And I thought, hey, what the heck, I'll go with it, even though I know once we get into discovery, I'm dead. Okay? I suppose, if you had that kind of evidence, that starts to sound like a sham. But we don't have that. So I'm just trying to figure out how you expect us to define the parameters of the sham claim in this context when there is this concern that you're opening the door to permit anyone defending on obviousness grounds to also assert that the one enforcing is engaged in a sham. Sure. So this is the pleading stage, right? And so you're asking for a pleading test. Correct. And so I'll give an example specific to this case. If we plead that the facts must show, the subsidiary facts must show that this is routine procedures, and we do that in detail, and we show admissions by the defendant before the patent office to that fact because it's admitting that its prior patent was enabled by this product, and we're able to show by way of a publication that it spontaneously turns to the beta crystal, we're also showing in other situations with their own articles that they're never talking about anything difficult or unexpected or unintended regarding the beta crystal. This is a kind of very detailed pleading that's responsible pleading, and I think that that's the case. I'll also say that if you take a look at the DDAVP and the Woods Camera cases, where we are going as sort of a suggestion, maybe you also want some kind of tarnishment, that there's actually a real concern about imposing at the pleading stage some kind of tarnishment possibility because what you're functionally doing is you're enabling the worst antitrust violators to file their litigations, then settle them before there's any tarnishment, and get away with that which you have in the first place. So that's what I would answer that question. That sounds a little bit like you're saying, if you plead obviousness, you can plead sham. No. Okay. More detailed is the idea? Well, it's more detailed. It's also you have to prove unequivocal facts. Right? So I am claiming... If you plead the cut, that's true for pleading obviousness also. No, no. I mean, obviousness... Sure. So now in addition to pleading sham, what is it beyond just the facts that would support the claim? That there's no realistic, we have to plead, subsidiary facts, that there's no realistic likelihood that Novartis could have a realistic expectation that at trial, anything other than the subsidiary facts, that this beta crystal form would survive by routine methods. Period. That's what we have to plead. That's the ultimate conclusion. We have to give subsidiary facts about it, which I think that we have done. Okay. Okay. So turn to the Walker Process Claim. The Walker Process Claim is similar to the sham one, and again, I'm trying to narrow it for these purposes because I think that, candidly, our briefs go into too much about some periodicals and some mislead salt versions. I'm trying to stick to the beta crystal form piece here. Novartis, before the patent office, represented as a fact to the PTO that the beta crystal form was a surprising discovery, that it was unexpected that the beta crystal form would arise from the molten sulfonic acid. We plead that that fact was false. Why? Because, in fact, what happens is that that beta crystal form is derived by routine procedures and that there was nothing unexpected, nothing whatever. That was material because if you go to the board's decision, after the patent examiner denies the patent because she puts the burden of proof on Novartis to prove non-routine aspects, that's what she did, she said, I don't have to do this, you have to come forward with evidence of non-routine aspects of Novartis. It goes up to the board, and the board says no. Novartis represented to us that it was surprisingly found, this beta crystal. They represented that to us, so we accept that, and now patent examiner, it's your job to prove that that's not the case. Wouldn't that be true if they had just said this was not an obvious discovery? Yes. So that's the problem I have. If they had misstated a fact, then you've really got my attention in terms of a potential claim. But if all they did was misstate, say it's obvious, and then the PTO grants the patent, I haven't seen the type of factual misrepresentation that would generate a lawful process claim. So the statutory aspect of obviousness is defined by certain kinds of facts. One of the facts is whether scientifically this beta crystal form was surprisingly discovered, and unexpected, or alternatively was simply derived from routine facts. That's a fact that goes under the legal conclusion of obviousness. But how do you suggest under? To me it sounds like equal. It sounds like just another way of saying obvious is not surprising. Well, there's actually a four-step test to determining obviousness under the statute. It's not simply whether it's just surprising. And there are case law under the obviousness test that talks about how the representations of unexpected results or surprising results is an evidentiary issue for obviousness. Which case would you point us to most directly? I think it would be the KSR case. So the materiality of that representation was key. Because the board, I know I'm going low, Your Honor, I'm trying to answer your question. Yes, go ahead. The materiality of that factual representation regarding this being a scientifically surprising result was critical to the board's decision to send this back to the examiner. Because they said we got this representation of fact. We accept it. It's now up to you, patent examiner, to issue the patent. We can look at it. But did the board call the surprising a representation of fact? It does not characterize it like that. But I think that you'll see, again, Your Honor, you'll see in KSR, the case law, and in this factual setting with this board decision, they're looking at whether this scientifically, factually, is a representation or not. And then after the board sends it back to the patent examiner on the basis of that representation, the patent examiner five weeks later just issues the patent without any comment. Just approves it. With some interesting handwritten comments that she has on the record about what the board had done. But in any event. So the Warner process fraud is that simple. But I think it is also that simple to plead at 12A6. There's a, in the actual world of discovering things, apart from the legal world, there's probably a range of one's expectation of the discovery, right? I'm certain that I'll find it. I'm shocked that I found it. Most likely I'm going to find it. Not likely at all I'll find it, right? A whole spectrum. Somewhere within that range, there's also a legal word, which is surprising, I understand, it's also a legal word. I'm not so sure it is, actually. I think the case law uses that word. But the word, the statutory word is non-obviousness in the statute. So insofar as one might think that the word surprising is just a synonym for non-obviousness, then the worry would be for you, or the concern that I would have about the argument you're making, would be that when you see the word surprising appear in the patent application, that's just doing the work of saying it's non-obvious, which is then falling somewhere in this range of how expected it was to happen. You're trying to suggest that we have to read that word as if it meant a lie relative to, in the non-legal world, how expected it was that one would discover the thing. Well, and I just think if that's not clear, then it seems harder to see how the fraud claim can sustain itself. Well, I think that the word surprising, when it is written in a patent application as a matter of fact, is there for a very specific reason. It's there to tell a patent office, as a factual matter, that this is something that's unexpected in the art, and therefore qualifies for entitlement to a patent. And are you saying that you've had enough facts that there's simply no way, in good faith, they could have believed that it was an unexpected result? Absolutely. For all those reasons that I've given you so far, both on the sham side and on the Walker-Fox side. So in that sense, if they even said in the patent application, this is non-obvious, you would also say that was a fraudulent claim? Yes, because for two reasons. First, that's factually not true, but also, under patent law, even making misrepresentations to the patent office of matters of law is also a source of fraud. Your complaint has another word that you haven't talked about, now. The word now, referring to the chronology of the discovery of the beta chrysalis. You're not mentioning that, though. Does that not do any work? It does work. I was trying to simplify things, but in the context of reading this patent application, which is applied for four years after this product is actually formulated and starts being tested, in the context of reading the later patent application, one can certainly get the sense that what Novartis is communicating is something about how, oh, now, like recently, now we have all of a sudden taken this old product and put it into this beta crystal form. But that's not true. And you allege they've been doing this since day one? Yes. Throughout this complaint, we said that they had been... Did you press that position below? I'm sorry? Did you press that position below, that there was actually a factual misrepresentation as to the chronology of the discovery, the chronology being material, because if it took them years to discover something, it's more likely it's not obvious than if they discovered it lickety-split at the beginning. Did you press that below? Yes. Yes, I think we did. Because I didn't see a site to it in your memos. That I don't have off the top of my head. I apologize. I don't have that. Send us a Rule 28J letter, please, with a reference to the record. Thank you. Good morning, Your Honors. I'm Saul Morgenstern for the Novartis Appellees. I'd like to start where we left off at the Patent, Trial, and Appeals Board, because I believe that it answers substantial questions, both as to the questions Your Honors were asking about the fraud claim and also with respect to the sham claim, which we can circle back to. The Board, and this is at the addendum that was submitted by, I believe, the plaintiffs, but I'm not sure, at ADD 042 in the record. The Board specifically said, For the purposes of this appeal, we shall assume arguendo without deciding that Zimmerman, which was the original patent, describes the methanosulfonic acid addition salt imatinib, we can just call that imatinib mesilate going forward, within the meaning of the statute. Nonetheless, we agree with the applicants that Zimmerman contains insufficient disclosure to support a funding of anticipation of the appeal claims which recite the non-hygroscopic or beta-crystalline form of the imatinib mesilate salt. So the Patent Office didn't just turn this around based on a misapplication of the pleading standards, the burden of proof in the PTL. It specifically assumed that what the plaintiffs now argue was not disclosed was a fact, and it specifically found that notwithstanding that fact, the original art did not disclose what was claimed in this patent. As for the acceptance of the surprising as a factual representation, the Board says nothing about it. The Board simply quotes the representation and then goes on to criticize the examiner's work below. The examiner does not deny that applicant specification that's in the claimed application teaches any person skilled in the art how to make the beta-crystalline form of the imatinib mesilate salt, nor can the examiner point to any passage in Zimmerman disclosing or suggesting the method of making the beta-crystalline form. It's a long leap, Your Honors, to go from that, to suggest that the Board was somehow fooled by the word surprising, and Judge Burroughs was perfectly correct in concluding that whether it was or was not surprising was well within the ambit of the examiner and the Board and the examiner on remand to determine for themselves because they had the entire record in front of them. What do you do about, when I read the patent application that's at issue here, I got the impression from the use of the word now that this is something that years later had been discovered and a patent was being sought for. Maybe that's the case or not, I don't know, but that's how the patent application read. The complaint in this case contains an allegation that that is false, that in fact it was discovered almost simultaneously. That seems to me, the chronology seems to me to be material to determining how obvious something is in that something that takes years to discover, even though there's a motive to discover it, points towards non-obviousness while something that pops out simultaneously doesn't mean it's obvious but it makes it more likely. So why isn't that under Walker process a material misrepresentation to secure the patent? So the Patent Office has in front of it the history of the art and it has all of the work that has been done that's in the patent application. It can see the relationship between the original art and the art that's being proposed here. The allegation in the complaint is simply a naked allegation that Novartis did it. There are no facts underneath there. It's simply a naked allegation. Yes, they isolated it back then. It's not a naked allegation. It's a factual allegation that it was discovered and used back then. That's not a conclusory. A conclusory one would be it was wrong or something, but they specifically allege factually that it was discovered back then. So I don't think that nakedness helps you there. Is there anything in the document that the complaint references that definitively rebuts that allegation? In a patent record? Sure. I don't know the answer to that, Your Honor. I don't think that the patent record... So they don't have a problem under ITFAL and under Rule 12b-6 that the complaint specifically alleges a false fact, and it seems like it would be material, and so at least for pleading purposes, is it not plausible that there may be some claim here? First, I don't think Judge Burroughs was given the opportunity to address now in the first instance. So you think there's a waiver issue here? She certainly addressed everything that was put in front of her in her fairly exhaustive opinion, but I don't think that now actually matters, because what matters for the purpose of obviousness under the patent law is whether the prior art teaches what's being claimed now, and the question of whether it's surprising or whether it was hard to develop or whether it was a big, what's the word for it, an instant discovery is not the way our patent law works. Our patent law rewards inventions over prior inventions. It doesn't reward inventions over prior inventions based on how surprising they are. They just have to be an improvement over the prior art. And so we're focusing, and this is why when the PTAB and the PTO and the examiner on remand, which, by the way, the examiner didn't just issue the patent. Novartis paid a second fee, filed the new application, disclosed all the material prior art that plaintiffs claimed had not been disclosed in the first iteration of the Walker Process Claim. The Walker Process Claim has sort of migrated over time from not being in the original complaint to being in the second complaint to being based entirely on nondisclosure, and when we demonstrated that the material disclosures had been made, then the argument became about the use of the word surprising. Can you go back to your point that you're saying that the sole issue is whether the prior art taught it. If it did, then it's obvious. If it didn't, it's not obvious. That doesn't quite make sense to me because you can have, couldn't it teach something that, or could it not teach something that's completely obvious to every science in the area? Say I've invented something, this car, and I'm done with it and I get it patented, and I then put something on it that isn't patented but is really obvious. It is possible that an existing piece of art teaches obvious developments from that art. It's the patent officer's job in the first instance, and in this case an examiner and then three appellate judges on the PTAB, to examine that art, compare the new art to the old art and all the literature, and determine whether the new art claims something that is actually an invention that is not obvious or anticipated by the prior art. And that's what all four of them ultimately did here. The examiner first rejected it, the three judges sent it back, and then the examiner, after getting a renewed application with a new fee and new materials, which she incorporated in the patent, as Judge Burroughs noted, noted on the patent itself, she then issued the patent. And now you have a patent holder that owns this patent, as Judge Barron heard before. I think you're shifting into the sham. Correct. Before you get to the sham, just on the fraud point, and I'm trying to understand how to think about how this relates to Iqbal and what's a conclusive reallocation and what's not. They are alleging that at the time they sought the application, at the time you sought the application, I'm sorry, you knew that, I don't know exactly what you want to put it, but the prior art or, in Judge Travis's terms, outside the prior art, just everybody who does this kind of work knew how to do this conversion. And yet you sought the application without making the patent examiner on the board aware of that. And yet to me that sounds like the fundamental allegation that is being made. Except that in a patent disclosure, Your Honor, you give the patent office the science. And the patent office are not novices who walk in off the street. These are people who review pharmaceutical patents all the time. And so they are equipped to make these determinations of obviousness or anticipation. And as you saw in the first instance, the examiner... I'm trying to figure out what the relationship between that is and the fraud claim. So I understand how that argument relates to the sham claim, because now you had the examiner pass on it. So that sort of insulates you from the allegation. But if we're on the fraud claim, is that related to materiality? What's the relevance of their expertise? It's a question of materiality. So the standard here in a Walker process claim is but for materiality. The court, in looking at the complaint, would have to say, if you imagine that we had this debate below, which we didn't, but the court in looking at the complaint would have to say, if they hadn't used the word now, this patent would not have issued. That is ultimately what the finding would have to be. So if you're applying the Twombly-Iqbal standard and you're looking at this alleged fact, they say, let's assume for the moment that was the debate below. Judge Burroughs would say, well, what about this word now? I'd say, well, Your Honor, in order to have that word now make a difference, then you would have to determine that if a jury found, that jury would be able to find. And that's what we have to determine on the record that went to the examiner and the board, because there's no allegation that there's anything that was not disclosed that bears directly on that question. Correct. They didn't make that allegation. There's no allegation of non-disclosure. Whatever they say is not disclosed isn't relevant to that. I'm sorry, but I understood it differently, that the plaintiffs were, in fact, alleging that Novartis had information prior to the submission of the extended patent application, which it did not disclose to the board. But they have alleged that that information exists, and this is what they say, and that's part of their allegations as to why there is Walker process threat. So is it the case that the materials referred to in the complaint were, in fact, disclosed to the patent board? I think there is a dispute about that. No, Your Honor. When we talk about the publications, the prior publications, there were five that the plaintiffs alleged were not disclosed, and three of them, one was actually disclosed within the patent itself. It was described within the patent itself. Three were also added to the record after, as you say, on remand. What they disclosed was what the patent board assumed. What those prior publications disclosed was the creation of the enamined mesolate salt itself, not the beta-crystalline polymorph that was claimed in this patent. And so all those publications did was confirm what the patent trial and appeal board assumed. And the assumption, arguendo, got that. Correct. So they confirmed the assumption, arguendo. The other two publications that they claimed were not disclosed, among the many publications that are out there in the world that are not given to the patent office, Judge Burroughs correctly found that they were cumulative or not material and would not have made a difference because they didn't say anything different from what was already in the patent record. But on the question of now, to shift back to that, the question there is it's a but-for materiality standard. In each of these instances, you have to look at these things and say, but for the use of this term now, this patent would not have issued. You have a process by which the board circled through all of this and concluded that, in fact, we have enough to determine that this was not obvious. It's a long leap to suggest that in the absence of the use of the word now, this patent would not have issued. But you can't say just because the patent was issued, we can therefore assume that there was no fraud. No, you cannot. So we're back to what does the fact that the patent was issued in the presence of the word now and the fact that your client felt it was necessary to insert now, which we have to assume under Vickvall was falsehood, suggests materiality. Why else put it in? There are a lot of words in the application that people choose to add and describe. It's a big deal application. And if we assume, as the complaint alleges, that it was completely false, you'd think someone would probably not stick it in unless they thought it was really going to be some move. Except, Your Honor, whether it's now or in the past is not the standard under the Patent Law. And so the materiality of whether it's now or in the past doesn't exist. Do you say it's implausible that it would be material? Yes, Your Honor. It's implausible to conclude that the Patent Office, they thought that, oh, well, this wasn't done now, this was done several years ago, would say, okay, therefore it's obviousness. Because the question of obviousness is obviousness over the prior art. I see I'm running out of time. We haven't talked about Shannon at all, Your Honor. Could you just address the standard that they were suggesting, which is that if they plead that there is no realistic possibility that you could, essentially they're pleading that it's baseless, and then they're saying here are all the facts that make it baseless. And it's a detailed recitation of facts. It's not just this is baseless. So I think this is where Judge Burroughs got exactly right, Your Honor. A sham claim is tested against an objective standard of baselessness. An objective patent holder would look at this entire record when the Sun case was filed against Novartis and say, I have to give up. I just have to go away. I can't defend this case. I can't count a claim against them. You have a case in which they have articulated, as Judge Burroughs said at best, a colorable invalidity claim. It cannot be the case that being able to make an argument for invalidity, which they admit depends on a full trial in invalidity, discovery in invalidity, and as they put it, the court's adoption of purchaser's construction of the prior art. Aren't they making the further allegation not just that it's invalid but that you would have known it was invalid at the time you filed and no reasonable person could have thought otherwise? Well, that's the inference that they wanted the district court below to draw. That's not an allegation of fact. And Judge Burroughs rejected that inference correctly because she looked at this record and she said, what you've done is you've alleged a colorable invalidity claim, but it's a litigable invalidity claim. What more can we expect to be alleged? In the ordinary case, in sham litigation cases, what you have is a history. You have a record from prior cases or some collateral developments that call into question the validity of either the patent or the settlement that's being challenged. So here you have none of that. In all of the cases they've cited, you've got a situation where you either have a massive reverse payment, which calls into question the substance of the underlying case, or you have prior litigation where something happened, a Markman hearing, for example, that called into question the possibility of an actual infringement case. In other cases, you've got almost affirmative frauds in the patent office, like in the Lillestren case where, for example, you had a patent holder that represented to the patent office that the patent would reduce bleeding in women taking birth control pills and suppressed an actual study that showed exactly the opposite. And there was no walker process claim there? Lillestren was, I think... I guess what I'm trying to figure out is, suppose you have a good but not great walker process. Is that relevant to then having a great rather than just good sham petition case? Yeah, Lillestren did have a walker process claim, too. So usually you have... And they rejected it? No, I found that went forward. Because they had an actual suppression of evidence contrary to what was claimed in the patent. Is there a finding in which you get a patent that the patent office experts have said, this is a patent and you can use it, presumably. Is there a case in which someone has been held to engage in a sham when they're defending or asserting their patent in the absence of any fraud on the patent office and in the absence of a tarnishment proceeding? There is no case yet where a sham litigation has succeeded, where there has been nothing, has gone forward, where there has been nothing to... None of those elements that I just described is not something to question at the outset. If you think about it, this was... What do you mean a question at the outset? To question... This is not an exercise in... This is not an exercise in retroactively looking at who might win and who might lose in the original case. This is an exercise in deciding what would the objective litigant have thought at the outset when the case was being filed. So at the outset when the case was being filed, you have here an objective patent holder putting him in no more than his shoes, knows the exhaustive process that this patent went through at the patent office. Knows for the reasons we discussed earlier that there were no affirmative misrepresentations to the patent office. Well, that's different. See, if you focus on materiality, what you could end up with in a situation is you lose a lot of the process because there's no materiality, but there were affirmative misrepresentations. There could have been lots of non-disclosures. There could have been lots of behavior that suggests you were trying to put one over on the patent office, but it didn't turn out to be fraudulent. And then, in the face of that history, you went ahead and defended this when it's perfectly clear to anyone that you were going to lose. Why don't those two things together add up to a plus factor? There's no case... There's no case rejecting that. Well, there's no case adopting it. There's no case rejecting it. It's never been argued. That's why a job's fun. It's fun to be a judge. So I think it's an audio honor. I think you don't want to be... If you look at the essence of the activist decision in the Supreme Court, it was that parties should be able to settle these cases, Hatch-Waxman cases, which work on an accelerated timetable and have to be settlable somehow. And the Supreme Court said if they're settlable anyway, they're settlable certainly by simply whacking up the patent period. So here you have a case where the case was brought, the case was settled, and now you have a third party wants to come in, reopen and re-litigate that settlement based literally on nothing other than their own theory of invalidity their own theory of obviousness, their own theory about what happened at the patent office. If that is permitted to go forward, no patent case can be settled because no patent owner is going to be buying peace by settling a patent case. When in fact, the people in the best position to challenge the patent, the people who are the only people under the patent laws who are outstanding to challenge a patent in the first instance, the alleged infringer, are the people who could have asserted any of these claims, and they didn't. So the sham litigation standards are extremely high and they're extremely high for a very good reason. If I may just go back a little bit in time, and I know I'm over here, Your Honors, but in the PRE case itself, Justice Stevens' concurrence taking a slightly broader approach to, even in taking a slightly broader approach to what might be sham litigation than the majority did, says, and I quote, access to the courts is far too precious a right for us to infer wrongdoing from nothing more than using the judicial process to seek a competitive advantage in a doubtful case. What the plaintiffs have alleged here is that they have a theory of invalidity or obviousness that is as good as or better than what the infringer's Novartis suit had, and that it's so obvious to them that any patent holder should have known about it and should not have brought this case. But that's just not enough. At best, as Judge Burroughs correctly found, they've articulated a colorable claim of obviousness, a colorable claim of invalidity. At best, you could say that that might have made the sham litigation a doubtful case. But as PRE tells you, the standard for sham litigation pleading is very high and it's very high for a good reason, because unlike the antitrust laws, the First Amendment's in the Constitution and PRE nor Pennington all stand to defend that right to have access to the courts. Thank you. Thank you. Thank you, Your Honors. First, I want to address the question as to whether there are other sham cases where there's no so-called tarnishment, if you will, that's out there. You take a law forward. Sorry? Or deception of the patent. Or deception, yes. And so there are five district court cases that conclude that. I can put that in the 28J or I can read them right now. In the letter, please. You're welcome. They should have had circuit court or Supreme Court. That's what I can't find. The closest analogy to this situation is the Lipitor case decided by the Third Circuit, 868F231 last year. In Lipitor, we alleged that a follow-on enantiomer patent for Lipitor had been fraudulently obtained from the PTO, even though in the underlying patent litigation itself, Pfizer won. So not only was there no tarnishment, there was, like, buffing, if you will. But you're alleging fraudulently obtaining. We allege that they had fraudulently obtained. My question is, is there any case with no fraud and no tarnishment? Other than five district court cases, there's no circuit court affirms of such a case. What I also point out, though, is that we have, I would suggest, plenty of tarnishment in this situation. Not only did Sun file a Paragraph 4 certification saying that this patent was invalid, but there are also seven other generic companies that also did the same in Syria. And we have Novartis, not once, trying to press to any decision on the merits in any of those cases. Plus, as we pled, and that the court has the opportunity to read, the decision of the Supreme Court of India is very unflattering about this patent. It's a matter argued by United States lawyers, deals with issues that happened before the United States Food and Drug Administration and the United States PTO, and talks at length about the difficulties of the legitimacy of this data crystal patent. Answering your question, Your Honor, as to whether the record dealt with the now issue, the briefs are not on the record, but in Judge Burroughs' decision at ADD 12, in the second full paragraph, she identifies that we had argued about the quote, recent, end quote, and surprising discovery. So that shows that that was argued below. And the final point I want to address is this. This is a pleading case. And when we plead in excruciating detail, not only that this patent was obvious, but that the representations of fact being made, that there's no other way to look at this other than that this data crystal was derived from routine procedures having an expected result, and we identify, again, that Novartis itself took that position about its original patent to the PTO, and we identify all the other materials, there's nothing more that we can do. Pre-getting into discovery and knowing that we've been able to plead, and speaking to our own internal experts and making appropriate allegations to make sure that they similarly equal right to making sure that our economy, particularly for large drugs like this, are not overpriced to consumers is just as important and equally weighty a concern as Novartis' concern that it be able to make the kinds of overstatements and misrepresentations that are made to the PTO here. Thank you.